Good morning. May it please the Court. Lee Tucker for Osama Alferahin. Your Honors, when we choose to strip an American of his citizenship and banish him from the country, that's one of the most drastic things we can do. And for that reason, it's not something done lightly. And Congress has ensured that denaturalization is not done lightly. When the Supreme Court looked at the denaturalization statute 8 U.S.C. 1451 in Kunjis, the Court held that denaturalization requires that the naturalization have been obtained through willful and material misrepresentation or concealment. So in other words, in order to lose your citizenship once you have it, you have to have lied, and you have to have lied in a way that mattered. The statute under which Mr. Alferahin was convicted, 18 U.S.C. 1425, is essentially a companion statute, the criminal companion to 1451. Indeed, 1451 references 1425, and once someone is convicted under 1425, 1451 allows denaturalization by the district court judge upon conviction. This Court held correctly in U.S. v. Puerta that 1425 requires a finding. Kagan. Let's assume that's correct, and let's assume that there should have been, if everybody was doing their job, a materiality instruction. However, there wasn't originally one, and when the judge asked the lawyer for the parties whether there should be one because it was being argued, the government said yes, and your client's lawyer said no. And I guess I would like to know whether there is any case that you're aware in which a situation like that was not considered to be invited error and an affirmative waiver as opposed to a forfeiture. Thank you, Your Honor. Yes, I think this case is not a case of waiver. First of all, just to correct perhaps a misapprehension, the way that happened, it was right after the government's closing argument. And the government had closed. Throughout the trial, people had been talking about materiality. No one had asked for a materiality instruction, and the judge had not included one in the stock instructions. The government finished their closing, and the judge called everyone's sidebar — not everyone — called counsel's sidebar and said, you keep talking about materiality. Would you like an instruction? The government did not say, yes, we want an instruction. They said, well, we don't care. Defense counsel declined an instruction, saying, well, it's not an element, and so, no, we don't think we need it. And the judge, in fact, at that point, again, said, materiality is not an element, but do you want the instruction? So it's clear that at that point, nobody knew. Waiver of such a fundamental right requires that it be known — that the party making that waiver know they have that right. Nobody there knew they had that right. Not the government, not the defendant, and not the judge. It's very much like Perez, the Perez case from this Court, in that aspect. Furthermore, this is the kind of case where if you were to have waiver of — because we're talking about waiver of a constitutional right to — under the Sixth Amendment to a full jury verdict based on proof beyond a reasonable doubt of all the elements. That would be the kind of case envisioned by the Supreme Court in Olano when you need more than just defense counsel at sidebar saying, no, I don't think we need it. In this case, you would need to have participation by the defendant. And some procedural protection to ensure that it's a voluntary and knowing waiver. And finally, I think regardless of defense counsel, such a waiver as a matter of law ought never to be allowed. We're talking about the essential element of the offense. And if you look at Harmon v. Marshall or this Court's Carrella v. California, the pivotal element required for conviction, you just — it can't be waived. Keep in mind, going into the — without that element instruction, this was essentially offering a directed verdict. Mr. Alito, let me go back to the — I mean, the invited error, because it does seem to me to be the main difficult issue in the case. Isn't this exactly the scenario that Paris said would have been a waiver? That is, where the government accepted to an instruction because it omitted a requirement and the defendant's attorney indicated that it wasn't necessary to have that requirement. And this is an example of a waiver because the record reflects that the defendant was aware of the omitted element and yet relinquished the right. And it specifically says that they don't have to necessarily know, you know, why it is they're entitled or not entitled to the right. This wasn't just a question of submitting an erroneous instruction or of failing to object to an instruction. It was affirmatively objecting to a specific element that would have cured the problem. Well, respectfully, I disagree that it was affirmatively objecting. First of all, I would remind the Court again of the posture in which this happened. It was after closing arguments by the government. Defense was ready to go forward with their closing argument. It was at the 11th hour, and it wasn't offered by the judge in the judge didn't say, wow, there is actually a required element we're not submitting here. It's materiality. The Ninth Circuit requires it. He was responding solely to the content of the government, to the closing. I do think it's different than Paris. And I think it's different both because of the off-the-cuff 11th hour way in which it came up and because this is not just any, this really is the central element. Mr. Al-Farrahan at trial, the issue was on his visa application, there was a question if he'd been previously married, name of previous spouse, and he put N-A. That was not disputed at trial. He did not dispute that. So essentially, when it went to the jury, without requiring a finding of materiality, it was a done deal. He had admitted that he made a misstatement. Isn't this perhaps an incompetence of counsel case? Well, Your Honor, I do believe it's also incompetence of counsel. Again, because essentially, Mr. Al-Farrahan was left without counsel at the stage of the jury instructions. So I do think that under the Strickland test, even on the record before Your Honor's, there's sufficient evidence to find ineffective assistance of counsel. Your position then is that this was forfeited, not waived. Yes, Your Honor, indeed. I think it's undoubtedly forfeited and could not be waived given the circumstances, given the law, given the fact that this was the crux of the case. Without this instruction, conviction was guaranteed. And I'd like to reserve my remaining time for rebuttal. Thank you very much. Thank you. Good morning, Your Honor. May it please the Court. I'm Chris Cavanius with the U.S. Attorney's Office in the District of Arizona. This is a classic case of waiver. This is right within Perez. And this is different because this is not a situation like Judge Berzon, you noted, where a defendant simply failed to raise the issue, it was an oversight. But it's a specific situation where he was specifically requested, do you want it? And the defense counsel said, no, I don't. And in Perez, this court noted that in that kind of a situation, that would be something that's evidence of an affirmative waiver relinquishment of a known right. And the known right was the right to have materiality instruction given. That's why this is clear waiver. Counsel, nobody seemed to know that it was an element of the crime. The government didn't seem to know that it was. The judge didn't seem to know that it was. And the defendant didn't seem to know that it was. They just hadn't read my case. Your Honor, actually, the government stated that it didn't believe that it was an element of the – it didn't state that it – the government stated that it didn't believe that it was required, although it didn't object if the defense wanted to have one. And also, it's not just that defense counsel stated that he thought that the elements were accurate as stated. He also noted that the government had not presented this in the indictment, which shows that there also would have been possibly a tactical decision to this, the defendant having noted that the government hadn't put materiality, that word, in the indictment, perhaps then saving that issue for appeal and not wanting the court then to cure what he perceived to have been error. But in either event, then, wasn't there an effective assistance? Because if there was a problem with the indictment, it should have been raised earlier because, as we know, the rule on indictment changes after conviction. Actually, I respectfully disagree. And the reason I disagree is because I – we would respectfully submit, number one, there was an error in this case. And I'd like to get to that, but jump into the – Wasn't there an error in this case? There was an error in this case, and there wasn't plain error. Because even if you were to find that this issue was not waived – No, I'm talking about ineffective assistance now. Well, ineffective assistance to counsel, if you choose to review that for the first time on appeal, the first question is whether or not somebody's – under the Strickland test, whether or not the counsel's behavior fell below the minimal standard of competency. And why was there not error? Because you're making the Swells argument? Excuse me? Why is there not error? It's not error based on the Wells argument, but also – But that can't be right. I mean, Wells was certainly – I mean, Wells' pointer was on a completely different statute, which doesn't even use the term materiality. It has different language than the Wells statute. It talks about contrarian law. It's referring to immigration statutes, some of which do specifically require materiality. It just seems like complete – we couldn't possibly, as a three-judge panel, reverse Puerta on the grounds of Wells, could we? Actually, Your Honor, if I can take a stab at that, I think you can, and here's why. Please do. In 1425, this Court noted in Puerta – now, first, I would also note the government defense counsel conceded the issue. It wasn't really at issue in Puerta. Also, this Court noted at the time it decided Puerta, there were no published decisions interpreting 1425 and whether or not materiality was required. Now, the legal landscape has changed a bit, and in Wells, the Supreme Court noted that if materiality is not specifically listed in the statute, and here it's not. Which statute are you talking about? The one that says contrarian, getting immigration, contrarian law? Yes, the statute of conviction. Well, of course it is, because it's referring to something else. But what it is referring to does have a materiality provision. Actually, that's not – I respectfully disagree with that. The phrase contrary to law can't be read as contrary only to 1451 and nothing else. That's what the other courts have noted from Southern District of New York, Eastern District of Virginia, and that makes sense, because we did submit that a violation of this statute could also be, then, contrary to law could mean contrary to 1015. Contrary to a different criminal statute, which would then be probably multiplicitous and a problem for that reason. Actually, I respectfully disagree with that. If you look at the jury instruction in this case, actually, it's in the defendant's excerpts of record, page 45, as well as page 66. The defendant – this is what the defendant's jury instruction read, and it tracked the indictment in this case, so we believe the defendant was given sufficient notice of this charge and that it would encompass this kind of behavior. So he had the opportunity to present a defense. First, the defendant knowingly procured his naturalization as a United States citizen contrary to law. He procured his citizenship contrary to law by willfully giving false information on the Form I-130 relating to his application for permanent resident status, because he willfully did not state on the Form I-130 that he was married to a Spanish wife. And, third, he willfully means the presentation was voluntarily and deliberately made. The jury convicted him of that offense. It found he knowingly misrepresented this. And also, the reason that we know 1015 was violated, again, 1425 is the statute of conviction. It says contrary to law, that law then, 18 U.S.C. 1015, it states. But if that's so, then you just charged 1015. Why are you charging 1425? Well, 1425 encompasses also the crime of knowingly procuring and attempting to procure. Right. And if you look at the indictment. What I'm asking is, if ultimately your position is that 1425 enforces 1015, and that's why there's no materiality provision, then you're essentially of 1015 and you didn't allege 1015, you alleged 1425. Well, we alleged 1425 where it says knowingly procuring authorization contrary to law. And, you know, I think I heard defense counsel mention about how 1425 is companion to 1451. But if you look at 1451, when they talk about canceling citizenship, it says if somebody has violated 1425 contrary to law. It doesn't say contrary to this statute, 1451. And that's the thing, is this Court didn't have the benefit of wills at the time it decided to work. All right. But here we are. We're at three judgments. Let's go back another step. There's the district court. There's the lawyer in that case. She has PRERTA, which certainly appears to be controlling, and she doesn't mention it. Why isn't that ineffective assistance right there? First, and I'm going to answer that, I wanted to – I forgot. I wanted to mention defense counsel, when she was talking about waivers, said something about how if it's jury instruction, you can't have counsel waive it. I wanted to point the Court on that question to Perez, footnote 7. It specifically states that defense counsel can waive jury instructions, and you don't have to ask the defendant. It's not that kind of a right. Moving to the answer to your question, why is it not prejudice? Ginsburg-McGillivray-Hillman, Jr.: Counsel, you can waive a jury instruction, but can you waive an instruction on a material element, one that's an element of the crime? Yes, you can. And I would submit that in Perez, you had, I believe they were referring to the language  from the courts, and for some reason, that case is escaping me now, but I could have sworn that there's, in Perez, they were talking about the overt act requirement. And I would submit to you that if you don't ask for an instruction, and it's not a matter of not asking for it, you say you don't want it, the district court then is – and as the district court here said, you know, I think that the statute, the indictment and the jury instruction mirror each other, but if the defendant objects to giving one of these, I'm not going to give one. And that is a classic waiver. That's why this is waived. And, yes, you can waive that issue. But I'd like to talk about why it is in this particular case, even if you find you're bound by puerta, why it is the defendant has not demonstrated that any error was plain and that it caused a miscarriage of justice. In this case, the defendant's petition was based on marriage. He asked to enter the country based on his marriage to his wife, Reem Arafat, a U.S. citizen at the time. That made the validity of prior marriages particularly relevant. And in Perez, this Court noted there's no miscarriage of justice if it looks like the jury had received strong evidence of the missing element and that it was extremely unlikely, if properly instructed, the jury would not have convicted the defendant. This would be a very close question under Cungas, in fact, as to whether this was material. My understanding of Cungas is that if there were a materiality element here, that the government would have to prove that this would have mattered, in fact, that it would have made a difference. And, in other words, Cungas seems to say that the fact that the government would have investigated isn't enough, that, in fact, they would have had to demonstrate that the outcome of the investigation would have made a difference. Actually, there's a much harder line than I had realized, actually. Actually, I think you might be incorrect about that, with all due respect, Your Honor. I think if you look at Puerta at page 1303, this Court noted that the statement made in Puerta was material because they had a natural tendency to affect the decision by creating the appearance that no further investigation of Puerta's background was necessary. That's exactly what happened here when he said not applicable to those questions about prior marriages. But what was the decision? I honestly, I do read Cungas as saying that even if the investigation was necessary, if it would have turned out after the investigation, that there wouldn't have been a problem with the naturalization, that it doesn't count. It has to. Actually, I respectfully disagree. I believe that the decision in Wells' counsel, she's talking about the language in Cungas and what it says, that they would have to show that the misrepresentation was material with evidence sufficient to raise a fair inference that a statutorily disqualifying fact actually existed. That's the language, counsel. The part that I remember of that decision, and I believe we still meet that here because Agent Johnston testified that in order for them to check the validity of this person's marriage, they'd have to have the information on there. There is evidence in this case, because we presented the evidence that he applied in 1998. His divorce didn't go through from his first wife until 2000. The jury would have reasonably concluded he was a bigamist when he applied. Yes, but the testimony in the record was specifically that the INS had no idea whether that would have disqualified him. And when the INS officer was asked, I guess it was an INS officer, but whoever was asked about what the government's policy was with respect to multiple marriages in a country that allowed multiple marriages, he said, you know, I don't know. I would submit to you, though, Your Honor, the standard is whether it would have a natural tendency to influence the agency decisions. That's the materiality definition that's replete in the case law, including PUERTA. And so I'd like to just explain, if I could, I know I'm out of time here, but I'd love to be able to just give you a few more facts. Because the defendant stated that these particular answers were not applicable to him, that is so essentially an important determination of whether or not his current marriage upon which he's applying for naturalization is valid. This Court has stated in decisions that I cited in a footnote of my brief that materiality that misstatements about marriage are material. The defendant also stated that he didn't want to, quote, complicate the process. That's the reason he wrote not applicable on there. And there are misstatements about marriage material unless we know whether the marriage would have been disqualifying. See, I think that last bit I disagree with. I remember reading the cases, and actually I do believe there's language, whether it be in Wells or one of the other decisions of this Court. Well, Wells was a case where there wasn't a materiality requirement. And well, exactly. But the standard that they were citing for materiality, I believe, is in there, because I do believe that they also refer to Congus. But what I would submit to you is it's the natural tendency to influence, and we don't have to show that the guy would have been barred from being entered into the country because of it. I don't believe that that's legally required when you talk about materiality. And because the defendant in this case so clearly waived this issue, I think it's like Perez where the Court noted that in such a situation it would be a miscarriage of justice to reverse, not to affirm. Thank you. Kagan. Roberts. Thank you. I appreciate your argument. It was helpful. Thank you. Thank you. I'd like to make a couple points, both as to waiver and to materiality. First, I'd like to clear up the government stated in response to a question from the jury that one can waive submission of an essential element. I disagree with that. And Perez says, quote, here we are dealing with an asserted constitutional violation. Failure to submit an essential element to a jury relieves the prosecution of its obligation to prove every element beyond a reasonable doubt. It is, therefore, a constitutional violation. Perez goes on to say it's not presumptively prejudicial. In this case, it is prejudicial for reasons that are explained in our brief. There just wasn't any evidence presented that this would have been a material fact. Second, as to waiver, I would also direct this Court back to your decision of last month in Gonzales-Flores on waiver, in which you stated that the courts will indulge every reasonable presumption against waiver of fundamental constitutional rights. Back to materiality, I don't know that the Court is particularly concerned with that. As to the link between 1425 18, 1425, the criminal statute and the denaturalization statute in 1451, I'd refer you to my reply brief, subsection C, which it just wouldn't make sense as a logical matter and a matter of statutory construction to not have materiality also be part of 1425. And, again, you've ruled that in part to the Supreme Court analysis, and Kungis is applicable here, too. And then going back to the issue which was just discussed as to whether this would have been material, would it be the test under Kungis, did it have to have been likely to influence the decision, or as counsel for the government suggests, would it be material just if it required more investigation? Well, I think the former is the correct reading, but in any case, I would urge the   in the case, it needed to go to the jury, regardless of which standard one was taking into account there. Right. But it might be harmless, actually, if there was an investigation standard, because there seems to be little doubt that if he had written down that he had a previous marriage, there would have been an investigation of the previous marriage to determine whether it was properly terminated and so on. But in this instance, there was no so – and that much was tried. What wasn't tried was the question of whether there really wasn't an issue about his marriage, whether they could have uncovered anything wrong with the marriage had they gone forward. Well, all the testimony presented at trial supported the fact that that marriage had ended in 1997 prior to his current marriage. Well, it was a little complicated, actually. The actual divorce was in 2000. Well, the religious divorce, excuse me, was in 1997. It was complicated, and I see no reason to think there wouldn't have been an investigation if he had written it down. So that, I think, really – that's really why I think this case really does turn on what the Cungus materiality standard is with regard to prejudice. Well, as to that, I think there's no doubt. The standard is would it have been likely to influence the decision of the decision-making body. Cungus is very clear in that regard. Thank you. Thank you very much. Thank you, counsel. It's a very interesting case. And the case of United States v. Al-Farahi is submitted, and we will go – the next case, Wallace v. Kramer, has been submitted on the briefs, and we will go to the last case of the day and of the week.
judges: B. Fletcher, Gibson, Berzon